IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NADEJDA N. STEFOGLO,

        Plaintiff,                      No. CIV S-10-2829 GGH

    vs.

MICHAEL J. ASTRUE,               <u>ORDER</u>
Commissioner of
Social Security,

        Defendant.
_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons that follow, Plaintiff's Motion for Summary Judgment is granted in part and denied in part, the Commissioner's Cross Motion for Summary Judgment is denied in part and granted in part, the Clerk is directed to enter judgment for the plaintiff, and this matter is remanded to the Commissioner for further development of the record.

<u>BACKGROUND</u>

        Plaintiff, born July 25, 1956, applied on February 22, 2008 for disability benefits. (Tr. at 99.) Plaintiff alleged she was unable to work due to osteoarthritis and allied disorders,

1

disorders of the nervous system, and affective mood disorder. (Tr. at 53, 54.) In a decision dated January 21, 2010, ALJ Mark C. Ramsey determined that plaintiff was not disabled. (Id. at 9-22.) The ALJ made the following findings:[1]

> 1. The claimant has not engaged in substantial gainful activity since February 22, 2008, the application date (20 CFR 416.971 et seq.).
>
> 2. The claimant has the following impairments which, in combination, constitute a severe impairment: mild degenerative disc disease of the lumbar spine, probable osteoarthritis of the knees, possible history of mild bilateral carpal tunnel syndrome, mild right elbow cubital tunnel syndrome, mild mitral valve regurgitation, mild antroseptal stiffness, mild degenerative disc disease of the cervical spine, cervicogenic headaches, right shoulder degenerative joint disease, fibromyalgia, mild obesity, and depression/adjustment disorder (20 CFR 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

     3.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

     4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 416.967(c) except that she is limited to no more than frequent manipulation with the upper extremities, and no more than occasional balancing, climbing, stooping, kneeling, crouching, squatting, or crawling. She can perform simple and detailed, but not complex mental tasks.

     5.     The claimant is capable of performing past relevant work as a housekeeper, an in-home health service worker, cleaner/cook at Taco Bell, and babysitter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

     6.     The claimant has not been under a disability, as defined in the Social Security Act, since February 22, 2008, the date the application was filed (20 CFR 416.920(f)).

(Tr. at 11-21.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A. Whether the ALJ's Decision "Cherry-picked Functional Capacity in a Vacuum, Divorced From the Impairments and Record;" and B. Whether the ALJ Improperly Rejected the Opinions of the Treating Physicians.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The

ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

### A. Failure to Credit the Portions of the Opinion of Treating Physician Dr. Palatnik

Plaintiff contends that the ALJ improperly rejected portions of Dr. Palatnik's opinions regarding both plaintiff's physical and mental condition.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[2] Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons. Lester, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported

---

[2] The regulations differentiate between opinions from "acceptable medical sources" and "other sources." See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e). For example, licensed psychologists are considered "acceptable medical sources," and social workers are considered "other sources." Id. Medical opinions from "acceptable medical sources," have the same status when assessing weight. See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d). No specific regulations exist for weighing opinions from "other sources." Opinions from "other sources" accordingly are given less weight than opinions from "acceptable medical sources."

4

examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund v. Massanari, 253 F.3d 1152 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

### 1. Physical Functioning

The record indicates that Dr. Palatnik treated plaintiff from January, 2008 through July, 2009, significantly before and after plaintiff was injured in a motor vehicle accident on December 4, 2008. He offered opinions regarding plaintiff's physical and mental functional capacity over this time period, but the highlighted opinions regarding plaintiff's physical abilities were provided on June 20, 2008, prior to the December 4, 2008 motor vehicle accident, on December 5, 2008, the day after the accident, and on July 29, 2009, over six months after the accident. Based on the timing of the accident, it would appear that the most accurate opinion would be the most recent one, provided after plaintiff's condition had stabilized following the accident, and after time for rehabilitative treatment had passed. The most recent report is the one the ALJ rejected, however.

The ALJ gave considerable weight to the December 5, 2008 report wherein Dr. Palatnik noted that plaintiff had suffered bruising to her abdominal wall and forearms and a short loss of consciousness following the vehicular accident. (Tr. at 403.) This treating internist

---

[3] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1    diagnosed cervical sprain/strain, thoracic sprain/strain, lumbar sprain/strain, cervical

2    radiculopathy, radiculitis, chest wall and abdominal wall contusions, contusion of the knees,

3    muscle spasm, post-concussion syndrome, and tension headaches.  He did not diagnose

4    depression at this time despite plaintiff's complaint of depressed mood, and despite the fact that

5    he had previously diagnosed depression in June, 2008, which he found so severe that although

6    plaintiff was able to physically do medium work, he concluded she could do no work due to her

7    mental impairments.  (Tr. at 403, 406, 281-90.)  On December 5, 2008, prescribed treatment was

8    physical therapy three times a week for four weeks, and Vicodin and Flexeril for pain and muscle

9    spasm.  Plaintiff was directed to "limit strenuous activity including heavy lifting, twisting and

10   repetitive bending for 2 months."  (Id. at 406.)

11           The most recent report from Dr. Palatnik, dated July 29, 2009, diagnosed back

12   pain and disc protrusion/herniation at L1-2, as well as shoulder pain, depression, insomnia,

13   chronic cervicogenic headaches and osteoarthritis.  (Id. at 449.)  Plaintiff was limited to walking,

14   standing and sitting less than one hour each per work day, and lifting less than five pounds

15   frequently and up to twenty pounds occasionally.  She was partially restricted in climbing and

16   bending, and required rest periods during the day.  At this time, plaintiff was taking Trazodone,

17   Prozac, and Meclizine, all of which had side effects.  Plaintiff described her pain as 7-8 on a

18   scale from 1 to 10, and Dr. Palatnik wrote that she was credible based on the MRI findings.  (Id.

19   at 449-51.)

20           From the examination the day after the accident until the July 29, 2009 report,

21   wherein Dr. Palatnik noted plaintiff's condition to be much worse, Dr. Palatnik consistently

22   affirmed his December 5, 2008 opinion in his intervening treatment notes.  See tr. at 377 (on

23   January 8, 2009: "the patient will need to continue current restrictions"), 369 (February 10, 2009:

24   same), 356 (March 10, 2009: same), 353 (April 13, 2009: same).

25           Dr. Palatnik's July, 2009 report, which suddenly greatly restricted her to the point

26   of finding she could not even do sedentary work, relied on MRIs of the spine and right shoulder,

6

1  dated March 26, 2009 and June 23, 2009 respectively. (Tr. at 386, 381, 449-50.) Plaintiff was
2  found to have "disc protrustion/contained disc herniation" in the spine, tearing, degenerative
3  changes, and a defect consistent with Hill-Sachs Deformity in the shoulder. (Id. at 386, 381.)
4  Dr. Palatnik concluded that plaintiff could only walk, stand, and sit for less than one hour, that
5  she could lift less than five pounds frequently, and occasionally lift five to twenty pounds.
6  Plaintiff was partially restricted in climbing and bending, and required rest periods during the
7  day. (Id. at 449-50.)

8          The ALJ's stated reasons for relying on the December, 2008 evaluation rather
9  than the later July, 2009 report were that the earlier report was after her car accident, yet only
10 limited strenuous activity such as heavy lifting, twisting and bending and was not as physically
11 restrictive as the later report. (Tr. at 18.) He explained that moreover, this report was made
12 before plaintiff had physical therapy and improved her range of motion. He questioned the July,
13 2009 evaluation which found plaintiff to be much more limited despite the lack of any
14 intervening circumstance[4] which would explain the more restrictive limitations. The clinical
15 findings during this time period did not support such a departure from the December, 2008
16 evaluation. The ALJ explained that imaging studies alone were not a sufficient basis to assess
17 such extreme limitations. For these reasons, the ALJ rejected the later report. (Id.)

18         Defendant contends that there were no intervening circumstances which would
19 have caused plaintiff's condition to worsen after the day following her auto accident. Without
20 any other cause, the mere fact of obtaining MRIs should not cause the opinion of plaintiff's
21 treating physician to change so drastically, especially in light of consistent reports reflecting
22 plaintiff's stable condition over several months between the post-accident report and the July,
23 2009 report. Nevertheless, plaintiff's condition one day after the accident was only temporary,
24 not stationary and permanent as it would have been after a few months of treatment and time to

---

[4] The undersigned construes this statement as meaning that there were no intervening circumstances aside from or after the motor vehicle accident.

heal.

The ALJ's reasons for rejecting the July, 2009 report are not sufficient, especially when considered with the remainder of the record. Although Dr. Palatnik's intervening reports between December, 2008 and April 13, 2009 were consistent with the December, 2008 report, the restrictions in the December, 2008 report precluded plaintiff from medium work, which is what the ALJ found she could do after relying on it. It is true that plaintiff's range of motion improved between December, 2008 and March, 2009, when Dr. Palatnik ordered that physical therapy be discontinued; however, her most recent measurements continued to be quite limited. For example, just after the vehicular accident, plaintiff's flexion and extension of her cervical spine was 10/30 degrees, while in March, 2009, it was 15/30. (Tr. at 404, 354.) The range of motion in her back had also improved, from 30/90 degrees in flexion just after the accident, to 60/90 degrees in March, 2009; however, it was still quite limited. (Id. at 405, 355.)

Defendant argues that Dr. Palatnik specifically considered the March, 2009 MRI of the spine in his April, 2009 evaluation, which maintained the previous limitations imposed on December 5, 2008, of "limit[ing] strenuous activity including heavy lifting, twisting and repetitive bending..." (Id. at 351-53, 406.) The ALJ's functional limitations are not consistent with this report, however, in finding that plaintiff can do her past medium work, which is precluded by such limitations. The ALJ erred in this respect also.

The undersigned does not necessarily agree that Dr. Palatnik's July, 2009 functional assessment accurately reflected plaintiff's limitations,[5] but the ALJ was not entitled to

---

[5] The undersigned notes that the ALJ found plaintiff to be not fully credible, (tr. at 14), and plaintiff does not contest this finding. Plaintiff's conclusory statement that the ALJ "wrongly derogates Ms. Stefoglo's credibility," without any argument or authority does not serve to raise the issue. See Pl.'s Mot. at 4. For this reason, and because the matter is being remanded for further proceedings, the undersigned will not reach this argument. However, on remand, if plaintiff's testimony regarding her subjective complaints is discredited, the ALJ must, in the absence of affirmative evidence showing malingering, set forth clear and convincing reasons for rejecting plaintiff's testimony. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). If plaintiff seeks to appeal any credibility finding after remand, she must

reject a more recent report that might reflect a more permanent and stationary condition. This type of selective reliance runs afoul of the general notion that the ALJ cannot pick and choose on portions of the evidence to support his conclusion. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability."); Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir.1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper."). Additionally, a finding of medium work based on a one-time report that precludes heavy lifting, twisting and repetitive bending, given its context, is misleading.

Furthermore, the ALJ appeared to have selectively relied on other medical opinions to support his conclusion, despite their limited relevance as pre-accident reports. For example, the ALJ gave significant weight to the consulting report of Dr. Lim, dated April 19, 2008, more than seven months prior to the auto accident. Yet, the ALJ did not rely on Dr. Lim's conclusion that plaintiff was limited to light work with added restrictions, such as only occasional bending, stooping, and crouching, and frequent manipulative limitations. (Id. at 238.) Light work requires some pushing and pulling of arm or leg controls if the job mainly involves sitting. 20 C.F.R. §404.1567(b). The ALJ ignored this portion of Dr. Lim's report and instead found plaintiff could do medium work including frequent manipulation with the upper extremities, but limited to occasional balancing, climbing, stooping, kneeling, crouching, squatting and crawling. (Id. at 13.) As a result, he concluded that she could do her past work as housekeeper, in-home health service worker, cleaner/cook at Taco Bell, and babysitter. (Id. at 21.)

Apparently the ALJ also decided to rely on the RFC of the SSA physician who did not examine plaintiff, and in fact accorded great weight to this report which was another pre-

---

explicitly raise the issue and support it with authority and argument.

9

accident medical assessment. This SSA physician's May 15, 2008 report was on a check-marked form, and found that plaintiff could do medium work with postural and manipulative limitations. (Id. at 247-54.) See Lester, 81 F.3d at 831 (opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of an examining professional); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir.1983) (expressing preference for individualized medical opinions over check-off reports). There is no other medical evidence in the record finding that plaintiff could do medium work.

In sum, most of the medical reports relied on by ALJ were based on plaintiff's condition prior to the motor vehicle accident, with the exception of Dr. Palatnik's December, 2008 report, which was based on an exam the day after the accident. As a result, the ALJ's reliance on bits and pieces of the record warrants a remand. Because no consultant has examined plaintiff since the motor vehicle accident, a consultation is necessary for this purpose. The consultant must have access to all medical records, including the most recent diagnostic studies. The regulations require that a consultative examiner be given any necessary background information about the plaintiff's condition. 20 C.F.R. § 404.1517. Background information is essential because consultative exams are utilized "to try to resolve a conflict or ambiguity if one exists." 20 C.F.R. § 404.1519a(a)(2).

2. Mental Functioning

Plaintiff next contends that the ALJ failed to provide specific and legitimate reasons to reject Dr. Palatnik's June, 2008 mental RFC, and that the ALJ failed to credit the significant mental limitations of the consultative examiner, Dr. Torrez, but gave him only limited weight.

In regard to plaintiff's mental state, the intervening motor vehicle accident does not carry as much of an impact. Plaintiff claims to have suffered from depression for four years prior to March, 2009. (Tr. at 440.) The ALJ found plaintiff's mental limitations were not fully credible. (Id. at 19-20.) As plaintiff has not contested the ALJ's finding in this regard, see n. 5

*supra*, it need not be separately analyzed. In any event, the ALJ did note that mental exam findings did not show significant memory or concentration loss despite plaintiff's allegations. Plaintiff was engaged in significant daily activities which would belie a diagnosis of depression, including reading the bible, doing household tasks, attending church regularly, driving children to school, shopping and doing errands, and interacting with friends and neighbors. (Id. at 20.) The ALJ then reviewed the mental health opinions, noting the disparity between them. First, the ALJ rejected Dr. Palatnik's opinion that plaintiff had a poor ability to perform most work related tasks that are mental in nature, and that she needed frequent breaks due to her mental impairments. Dr. Palatnik's statement that plaintiff suffered from multiple side effects of medication was rejected as not supported by the objective evidence or by plaintiff's daily activities. (Id. at 20.)

   The ALJ properly discounted Dr. Palatnik's opinion concerning plaintiff's mental impairment because it was refuted by both plaintiff and her sister who made statements that plaintiff takes her children to and from school, cleans around the house, makes food, walks around, washes dishes, rests, and does laundry occasionally. (Tr. at 122, 134.) Plaintiff made consistent statements regarding her daily activities to Dr. Torrez also. (Id. at 242.) Furthermore, both plaintiff and her sister also stated that plaintiff had no problems getting along with others, such as family, friends, and neighbors. (Id. at 127.) Therefore, Dr. Palatnik's opinion that plaintiff had a poor ability to follow work rules, relate to co-workers, deal with the public, use judgment and interact with supervisors, is inconsistent with her admitted activities. (Id. at 288.)

   The ALJ then gave Dr. Torrez limited weight. He accepted this consulting psychologist's opinion that plaintiff had a fair ability to maintain concentration and attention, a good ability to understand and remember very short and simple instructions, as well as detailed instructions, and that plaintiff could respond appropriately to supervision. He opined that these assessments were supported by the record, which reflected limited treatment and generally normal mental status findings. (Id. at 20.) He rejected a portion of Dr. Torrez's findings,

11

however, as unsupported, including that plaintiff's ability to interact with coworkers and to deal with various changes in the work setting was only fair as was her likelihood of emotionally deteriorating in the work environment.  He explained that the record did not support such limitations because there was no evidence that plaintiff had difficulty getting along with others, had suffered from episodes of emotional deterioration, and there was a lack of evidence of significant problems adjusting to routine work changes.  (Id.)  The ALJ also rejected this psychologist's opinion regarding plaintiff's ability to complete a normal work day or week based on her medical, as opposed to mental, condition because this consultant was not in a position to discuss her physical condition.  (Id. at 20-21.)

The ALJ then opined that the state agency assessments finding plaintiff's mental impairments were not severe, were somewhat supported by the record, including lack of ongoing treatment, limited findings, generally good functioning and daily activities.  The ALJ concluded that pursuant to Dr. Torrez's report and plaintiff's distraction due to physical impairments, he would impose a restriction from complex tasks, and limit plaintiff to simple and detailed tasks. (Id. at 21, 13.)

A closer look at Dr. Torrez's report, dated April 26, 2008, indicates that the ALJ was correct to rely in part on this consultant.  First, it should be noted that at the time of this exam, prior to any mental health treatment, plaintiff's GAF score was 63.[6]  Although this psychologist thought plaintiff to be credible, he did note that plaintiff's "attitude toward seeking employment is poor, influenced primarily by her reported medical condition."  He also stated, "[d]espite the claimant's reported symptoms and history, she does not appear to be suffering

---

[6] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM IV"). According to the DSM IV, a GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV at 34.

from a major mental disorder at this time. The claimant appears to be able to function adequately. The claimant's limitations appear to be primarily due to her reported medical problems." (Tr. at 243.) Dr. Torrez's limitations rejected by the ALJ, therefore, were linked to her physical condition.

Furthermore, the ALJ was permitted to accord Dr. Torrez's opinion limited weight because it was based mainly on plaintiff's subjective complaints which were found by the ALJ to be not totally credible, and because there were no mental health records in existence (other than Dr. Palatnik's March 19, 2008 progress notes), at the time she completed her examination. (Id. at 239.) Dr. Torrez had found plaintiff's ability to interact with coworkers to be only fair, as was her ability to deal with changes in a work setting; however, for the same reasons as stated above in regard to Dr. Palatnik's similar assessment, the record on plaintiff's daily activities is inconsistent with such limited social functioning. (Id. at 244.) "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), *citing* Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (*citing* Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." Id.

> Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for a doctor's report based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).

Morehead v. Astrue, 2008 WL 3891464, *5 (E.D. Wash. 2008).

Moreover, the ALJ's reasons for rejecting a portion of this consulting opinion are supported by the record. An ALJ may properly rely upon only selected portions of a medical

13

opinion while rejecting other parts. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753 (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes substantial evidence). However, such selective reliance must be consistent with the medical record as a whole. See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ cannot reject portion of medical report that is clearly reliable). For example, as set forth by defendant, the ALJ properly noted that Dr. Palatnik's statements regarding side effects such as nausea and faintness were not shown to be an ongoing problem. (Id. at 20.) Although plaintiff did report these side effects in April, 2009, she later denied having such symptoms. (Id. at 434, 436.)

Plaintiff points out that the ALJ did not rely on a later, more serious diagnosis of major depressive disorder, moderate, with a GAF of 49,[7] by Sacramento County Mental Health on March 9, 2009. (Id. at 438.) At this time, plaintiff complained that she had little motivation for normal activities, that she "wished she no longer had to go on living," and plaintiff appeared sad and tired. (Id.) Plaintiff's treatment at El Hogar, the County's health facility, lasted only five months, and this visit was near the beginning of the treatment period. On later visits, plaintiff's Prozac had been doubled, BuSpar had been increased from two to three times per day, she was taking this medication as prescribed, and reported that she was "doing a little bit better." (Id. at 432, 431.) Although not specifically rejecting these records, the ALJ properly noted the lack of ongoing treatment. (Id. at 21.) The fact that plaintiff only received five months of treatment for major depression is a satisfactory reason to discount her condition. The ALJ is entitled to

\\\\

\\\\

\\\\

---

[7] A GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

consider plaintiff's unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).[8]

Furthermore, plaintiff's GAF score of 49 is not dispositive.  A low GAF score does not alone determine disability, but is a piece of evidence to be considered with the rest of the record.  Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (citation omitted).  The GAF scale does not have a direct correlation to the severity requirements in the listings of

---

[8] SSR 82-59 provides in relevant part (emphasis added):

Individuals with a disabling impairment which is amenable to treatment that could be expected to restore their ability to work must follow the prescribed treatment to be found under a disability, unless there is a justifiable cause for the failure to follow such treatment ...

The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20 C.F.R. § 404.1530 under Title II) similarly provides:

(b) When you do not follow prescribed treatment.  If you do not follow the prescribed treatment without a good reason, we will not find you disabled ...

Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for declining to following prescribed treatment, none of which are present here.

20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for declining to following prescribed treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
(4) The treatment because of the enormity (e.g. open heart surgery), unusual nature (e.g. organ transplant), or other reason is very risky for you; or
(5) The treatment involves amputation of an extremity, or a major part of an extremity.

Additional acceptable reasons for declining to following prescribed treatment set forth in SSR 82-59 are:

(1) Fear of surgery;
(2) Inability to pay for prescribed treatment;
(3) A medical source has advised against the treatment.

15

mental disorders.  65 Fed. Reg. 50746, 50764-65 (2000).  An ALJ is permitted to discredit a GAF score where it is unsupported by objective evidence.  <u>Clark v. Astrue</u>, 2009 WL 542166, *6 (C.D. Cal. 2009).

The ALJ additionally made note of the SSA non-examining reports, dated May 16, 2008, and August 19, 2008, which both found plaintiff's mental impairments to be non-severe.  (<u>Id.</u> at 255, 328.)

In sum, as pointed out by defendant, the ALJ significantly noted the "considerable disparity" between the opinions on plaintiff's mental status.  (<u>Id.</u> at 20.)  He was entitled to rely on the opinions that he did, and substantial evidence supports his reasons for doing so.[9]

CONCLUSION

For the reasons stated herein, IT IS ORDERED that: plaintiff's Motion for Summary Judgment is granted in part and denied in part, the Commissioner's Cross Motion for Summary Judgment is denied in part and granted in part. The Clerk is directed to enter judgment for the plaintiff, and this matter is remanded to the Commissioner for further development of the record pursuant to sentence four of 42 U.S.C. §405(g) in accordance with this order.

DATED: December 12, 2011

　　　　　　　　　　　　　　　　　　　/s/ Gregory G. Hollows
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

GGH/076/Stefoglo2829.ss.wpd

---

[9] Because the case must be remanded for further consultation in regard to plaintiff's physical impairments, the issue of plaintiff's residual functional capacity will not be addressed at the present time.